## UNITED STATES v. ONE CHEVROLET LOADMASTER TRUCK.

### Civ. A. No. 241.

United States District Court
W. D. Virginia, Danville Division.

June 30, 1950.

430

Howard C. Gilmer, Jr., United States Attorney, R. Roy Rush, Assistant United States Attorney, Roanoke, Va., for libellant.

C. Carter Lee, of Rocky Mount, Va., for claimant.

BARKSDALE, District Judge.

By stipulation between the parties all questions of law and fact having been submitted to the Court for decision without a jury upon written statements of witnesses to be considered as their testimony, subject to certain objections as to admissibility and competency interposed by claimant and set out in said stipulation, the Court does hereby find the facts and state separately its conclusions of law as follows:

### Findings of Fact.

On February 3, 1950, the District Supervisor, Alcohol Tax Unit of the United States Treasury Department, acting through certain investigators, seized the truck here in controversy in Pittsylvania County in the Western District of Virginia, and a libel for the forfeiture thereof was filed in this court, on March 13, 1950. Thereafter, on April 3, 1950, the claimant, Ervin James Jarrett, admittedly the owner of the truck, filed his answer denying the allegations of the libel and praying that the truck be returned to him.

The claimant neither filed any statement in lieu of evidence nor adduced the statement of any one else in his behalf. The facts and circumstances in connection with the seizure of the truck by Government agents, as appear from the Government's evidence, were as follows:

On February 1, 1950, officers located a 500-gallon distillery, with seven 500-gallon box fermenters and other distilling equipment, on an abandoned farm in Pittsylvania County. The distillery apparently had been recently in operation, but was not in operation at the time of its discovery. Tracks showed that raw materials for the operation of this distillery had been hauled on a horse-drawn sled from an old barn about three hundred yards from the distillery. A farm road led from the highway to this barn. Other tracks showed that materials and equipment had been hauled to this barn by a dual-wheel truck. Certain equipment and materials for distilling were found in this barn. Tracks of human beings indicated considerable activity at and around the barn.

On February 3, 1950, the officers returned, and finding the distillery in operation, raided it and apprehended the three operators, one of whom was Ervin James Jarrett, the claimant in this action. The operators admitted that they had that morning mashed in 1,400 pounds of sugar, but refused to say how the sugar had been brought there.

The truck here in controversy was located and seized at a point on the farm road about three hundred yards from the tobacco barn which had been used by the distillers as a storage place. This truck was equipped with dual-wheels, and as it had recently rained, the tracks showed that a dual-wheel truck had been driven over the farm road to a point below the storage barn, there turned around and driven back to the storage barn where sled tracks led off toward the distillery. Many footprints were found around the point where the truck had stopped near the barn. Dual-wheel truck tracks led from this point to

the point where the truck was later found and seized. Only one fresh truck track appeared on the farm road leading to the storage barn, and that was the track of a dual-wheel truck.

At the time of the seizure, the cab of the truck was locked. Fresh mud was found in the body of the truck, and also several empty cloth meal bags. The claimant, Jarrett, the owner of the truck, was apprehended while actually engaged in the operation of the distillery. The keys to the cab and ignition of the truck were found on the person of one Harper, who was apprehended while jointly engaged with Jarrett and another in the operation of the distillery. Jarrett denied that he had hauled any materials or equipment for the distillery in the truck, but admitted that he had brought with him on the truck the two other persons who were apprehended while operating the distillery, from a point about forty miles away in Franklin County. Jarrett stated that his truck had been used for the past several days by a man, whose name he refused to reveal, and stated that he did not know for what purpose this man had used the truck.

The distance from the distillery to the storage barn was 395 steps.

■ From the facts and circumstances set out above, I find as a fact that the truck here in controversy, on February 3, 1950, was used to haul sugar to the distillery for use in the manufacture of illicit liquor and was used by claimant, Jarrett, its owner, to carry on the business of a distillery, without having given bond as required by law, and was used by said Jarrett in the operation of an illicit distillery set up and in operation for the production of distilled spirits.

Conclusions of Law.

Respondent cites and relies on United States v. One Chevrolet Truck Automobile, Motor No. K-4148408, and 1,800 Pounds of Sugar, D.C., 8 F.Supp. 271, 272. In that case, the Government sought forfeiture under Rev.St., Sec. 3450, at that time 26 U.S. C.A. § 1181, now 26 U.S.C.A. § 3321. In construing this section, the Court reached the conclusion that, " * * * while the

law provides for the forfeiture of both the taxable commodity and the material used in its manufacture, when it comes to dealing with containers and vehicles it provides for the forfeiture only of those which contain or were used in the removal of the taxable commodity (liquor), and not those which contained or were used in removing the material." As the proof in that case only showed the transportation of sugar, the Court refused to decree forfeiture of the vehicle.

. I do not consider the reasoning in that case as analogous to the situation presented by the instant case, for the reason that here, the forfeiture is sought under an entirely different statute, 26 U.S.C.A. § 3116, the pertinent provisions of which are as follows: "It shall be unlawful to have or possess any liquor or property intended for use in violating the provisions of this part, or the internal-revenue laws, or regulations prescribed under such part or laws, or which has been so used, and no property rights shall exist in any such liquor or property * * *."

■ It seems clear that the vehicle here in controversy, under the facts of this case, should be forfeited. Kent v. United States, 5 Cir., 157 F.2d 1, United States v. Windle, 8 Cir., 158 F.2d 196. Neither of these cases involved raw material, but I do not have any doubt that the vehicle here in controversy constituted "property intended for use in violating * * * the internal-revenue laws", and which had been so used, which would render it forfeitable under the provisions of § 3116.

Even if this proceeding had been instituted under Rev.St. 3450, formerly 26 U.S. C.A. § 1181, now 26 U.S.C.A. § 3321, I hardly think that the case of United States v. One Chevrolet Truck, supra, would be controling, in view of United States v. Ryan, 284 U.S. 167, 174, 52 S.Ct. 65, 76 L.Ed. 224; Yellow Manufacturing Acceptance Corp. v. United States, 9 Cir., 84 F. 2d 164, 167, 168; United States v. One 1936 Model Ford Dump Truck, D.C., 25 F.Supp. 600, 602, and United States v. One Ford Truck, D.C., 44 F.Supp. 415.

From the facts found, I conclude that, on February 3, 1950, claimant, Ervin James

432

Jarrett, had and possessed the truck here in controversy, which was property intended for use in violating the internal revenue laws of the United States, and that on said date the said claimant, Ervin James Jarrett, had so used the truck here in controversy, in violation of 26 U.S.C.A. § 3116.

 I conclude that the truck was not subject to forfeiture under the provisions of 26 U.S.C.A. § 3720, because not found within any yard or enclosure where raw materials or liquor was found.

I further conclude that the seizure of said truck was in all respects legal, and that it is subject to forfeiture to the United States.

An order will be entered ordering the forfeiture of said truck as prayed in the libel herein. The United States Attorney will draw and submit the order.